S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**LEAH K. BOLSTAD, OSB #05203**
Assistant United States Attorney
Leah.Bolstad@usdoj.gov
1000 S.W. Third, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:12-CR-00630-BR |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| SHANNON SHARIF DANIELS, | *Sentencing Hearing 1-6-15 at 9:00 a.m.* |
| **Defendant.** | |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, through Leah K. Bolstad, Assistant United States Attorney (AUSA), hereby submits the following sentencing memorandum.

## I.  GOVERNMENT'S SENTENCING RECOMMENDATION

For the reasons set forth below, the government recommends that the Court impose a sentence of 60 months' imprisonment, a five-year term of supervised release, restitution, and a $100 fee assessment.  Such a sentence properly addresses the nature and seriousness of the offense, provides just punishment, affords adequate deterrence and significantly protects the public from further crimes of this defendant.

## II.  SUMMARY OF PROCEEDINGS

On November 29, 2012, the grand jury indicted defendant for Sex Trafficking of a Minor (Counts 1 and 3) and Transportation of a Minor (Count 2).  On March 21, 2013, defendant

appeared in federal court on the indictment, pled not guilty and was detained as a danger to the community.  (CR 9).

On September 23, 2014, defendant entered a guilty plea to Count 2, Interstate Prostitution of a Minor (a/k/a Transportation of a Minor), in violation of Title 18, United States Code, Section 2423(a).  The maximum sentence for this offense is life imprisonment, a statutory mandatory minimum of ten years, a fine of $250,000, at least five years of supervised release, and a $100 fee assessment.  PSR ¶¶ 86, 90.

The United States Probation Office completed a Presentence Report (PSR).  The government agrees with the PSR's factual summary, criminal history, and guideline calculation, including the two-level reduction for early resolution (PSR ¶ 99).  If accepted, these guidelines produce an estimated advisory guideline range of **70-87 months' imprisonment**.  PSR ¶¶ 47-57.

### III.   FACTUAL BACKGROUND

Defendant's trafficking of victim A.W. was not an isolated event.  Rather, his trafficking occurred over the course of several months and can be organized into two chapters: (1) in January 2012, defendant was caught by police in Vancouver, Washington, where they set up a sting to recover a very youthful looking female (A.W., age 15) seen in Backpage postings; and (2) in August-October 2012, defendant transported A.W. to several states (California, Utah, Nevada) for commercial sexual activity.  In Chapter 1, defendant was arrested and warned in no uncertain terms that victim A.W. was under age 18.  He was given a chance to move on with his life and discontinue his trafficking activity.  In Chapter 2, defendant decided to continue to be engaged in sex-trafficking, and to engage in it with the very same minor victim that police instructed him to avoid.

On January 18, 2012, law enforcement agents with the FBI's Child Exploitation Task Force observed pictures of victim A.W. posted on the escorts section of Backpage.com. Agents called the phone number on that advertisement and set up a date with A.W. in Vancouver, Washington at the La Quinta Inn and Suites, Room #409. During the phone call, A.W. explained the price would be $280 per hour. Agents approached that room and found victim A.W. She admitted to engaging in commercial sex acts and said that she was doing this activity voluntarily. PSR ¶ 26. She explained that she gave her proceeds to defendant for safe-keeping and she stayed with him for "protection." Additionally, she admitted that she had initially lied to defendant about her own age, and she did not want him to get into trouble.

While some agents were speaking to victim A.W., other agents located defendant (age 20 at the time) in the motel lobby. He admitted to staying in Room #409, and he had over $2,000 on his person. PSR ¶ 22. Defendant relayed that A.W. was his "girlfriend," and that he had met her on Facebook. PSR ¶ 25. The agents informed him that A.W. was only 15 years old, and advised him to stay away from her. He was arrested on state charges that were later dismissed.

Several months later, in August 2012, law enforcement once again encountered defendant trafficking victim A.W. PSR ¶ 29. Victim A.W. was arrested in the Los Angeles area, held temporarily in juvenile hall, and then released to return home to Portland. Once home, she met another trafficking victim and together they traveled to New York to engage in commercial sexual activity. Victim A.W. returned home to be with defendant. In October 2012, A.W. travelled with another female and defendant to Utah where A.W. performed additional commercial sex acts and transferred the proceeds to defendant. PSR ¶ 32. At approximately the same time, victim A.W.'s mother filed a missing person report with the Portland Police Bureau. According to victim A.W., defendant prevented her from contacting her family members by

phone or email while with him on these interstate trips. PRS ¶ 34. She also recalled being afraid of defendant who had used violence toward her in the past. PSR ¶ 34.

In late October 2012, victim A.W. fell asleep in the car driven by defendant as it went from California to a purported destination of Utah. When she awoke, victim A.W. realized defendant had brought her to Las Vegas. This frightened her because she had an outstanding warrant in Nevada. Soon enough, law enforcement stopped the vehicle and officers noticed that victim A.W. appeared far too young to be on the Las Vegas Boulevard without a legal guardian. She provided a false name and was arrested. Agents located the missing persons report out of Portland, Oregon, and she was eventually returned to Oregon. Meanwhile, defendant was arrested and charged with Kidnapping I in Nevada, a charge that is anticipated to be dismissed after defendant is sentenced federally. PSR ¶ 38. He had $4,200 on his person at this October 27 arrest. PSR ¶42. During a search of defendant's laptop computer, agents discovered multiple postings on escort websites and defendant's Twitter profile "Lavish Livin." On October 17, 2012, ten days before his arrest, defendant tweeted "*It's hard out here for a pimp*." PSR ¶ 39.

Victim A.W. again spoke to investigators from the FBI's Child Exploitation Task Force and confirmed that she was engaged in commercial sex acts and that defendant could be seen, in the eyes of the law, as her pimp. She explained that she had revealed her true age to him even though she initially had lied about her age. PSR ¶ 41.

## IV.   SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. §3553(a)(4); *United*

**Government's Sentencing Memo, 3:12-CR-00630-BR,** *Daniels*                                    **Page 4**

*States v. Rita*, 551 U.S. 338, 347-48 (2007).  They serve as "the starting point and the initial benchmark" in every sentencing proceeding, *Gall v. United States*, 552 U.S. 38, 49 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350.  The guidelines serve as a "lodestar" at sentencing, and "cabin" or "anchor" a sentencing court's discretion.  *Peugh v. United States*, __ U.S. ___, 2013 WL 2459523, *9-10 (2013).  While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences."  *Id*.

The remaining statutory factors include the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant.  18 U.S.C. §§ 3553(a)(1)-(2).  They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(7); *see also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).  In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008), the Ninth Circuit, sitting *en banc*, summarized the procedures a sentencing court must follow.  The court must first correctly determine the applicable guideline range.  *Id*. at 991.  The court must also allow the parties to "argue for a sentence they believe is appropriate," and must "consider the § 3553(a) factors to decide if they support the sentence suggested by the parties."  *Id*.  The court may not presume the guidelines are reasonable, and should not give them any more or any less weight than any other factor.  *Id*.  The court "must make an individualized determination based on the facts," and must explain its choice of sentence "sufficiently to permit meaningful appellate review." *Id*. at 991-92.

### V.    GUIDELINES CALCULATION & RESTITUTION

#### A.    Guidelines

The government agrees with the sentencing guideline calculations in ¶¶ 47-57. The base offense level is 28. PSR ¶ 47 (U.S.S.G. § 2G1.3(a)(3)). The government agrees with the PSR writer as to the applicability of two enhancements (Plea Agreement ¶ 9, PSR ¶¶ 48-49), and a three-level reduction for acceptance (PSR ¶¶ 55-56):

>     28, Base Offense Level,
> + 2, Use of a Computer (U.S.S.G. § 2G1.3(b)(3))
> + 2, Commission of a Sex Act (U.S.S.G. § 2G1.3(b)(4))
> – 3, Acceptance (U.S.S.G. § 3E1.1)
> = 29, adjusted offense level.

Pursuant to the plea agreement, the government recommends an additional two-level downward variance under Section 3553(a) to recognize defendant's early resolution, foregoing pretrial motions and sparing the victim from protracted litigation. The government agrees with the PSR that due to defendant's lack of prior criminal history, he is in the lowest criminal history category (CHC) of I. At adjusted offense level 27, CHC I, the advisory range is **70-87 months'** imprisonment.

#### B.    Sex Offender Registration

Pursuant to the plea agreement and federal law (SORNA), defendant understands that as a result of this conviction, he must register as a sex offender and keep that registration current in any state in which he resides. PSR ¶ 10.

#### C.    Restitution to the Victim

The government sent restitution paperwork to the victim, but at this time, there is no documented restitution request. The victim has also been made aware of the sentencing date and

time; she is also aware that she may submit a victim impact statement, but she has not yet provided one to the government. The United States Probation Office forwarded to the Court a victim impact statement submitted by the victim's mother.

## VI.     CONCLUSION & RECOMMENDATION

The government believes that a 60-month period of incarceration, followed by 5 years of supervised release, is a fair and just resolution to this sex trafficking case. The nature of this offense is horrific – violations of 18 U.S.C. § 2423 involve transporting children interstate for the purposes of having them engage in commercial sex acts with strangers. The sentence imposed must reflect that seriousness and in so doing, provide general deterrence for those contemplating similar conduct that victimizes children.

For the reasons set forth above, the government urges the Court to impose a sentence of 60 months' imprisonment, followed by five years on supervised release, restitution, and a fee assessment of $100. Such a sentence will protect the public from further crimes of the defendant, reflect the seriousness of the offense, promote respect for the law, deter others from recruiting and transporting young women to engage in commercial sex acts, and provide punishment for the defendant, while also satisfying the requirement of 18 U.S.C. § 3553(a), as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

Dated this 30th day of December 2014.

                                                   Respectfully submitted,

                                                   S. AMANDA MARSHALL
                                                   United States Attorney

                                                 *s/ Leah K. Bolstad*
                                                 LEAH K. BOLSTAD, OSB #05203
                                                 Assistant United States Attorney